UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DONALD J. TRUMP,

    Plaintiff,

vs.

SIMDAG/ROBEL, LLC, a Florida limited liability company; FRANK DAGOSTINO; HOWARD HOWELL; ROBERT LYONS; PATRICK SHEPPARD; and JODY SIMON,

    Defendants.

_____/

Case No. _____

Division _____

## COMPLAINT

The plaintiff, Donald J. Trump ("Trump"), through his undersigned counsel, hereby sues the defendants, SIMDAG/ROBEL, LLC, a Florida limited liability company ("Simdag"); Frank Dagostino ("Dagostino"); Howard Howell ("Howell"); Robert Lyons ("Lyons"); Patrick Sheppard ("Sheppard"); and Jody Simon ("Simon"), and states as follows:

### General Allegations

1. This Court has jurisdiction over Trump's claims pursuant to 28 U.S.C. § 1332.

2. Trump is a citizen of the State of New York and is not a citizen of the State of Florida. Defendant Simdag is a limited liability company organized and existing under the laws of the State of Florida. Defendants Dagostino, Howell, Lyons, Sheppard, and Simon are citizens of the State of Florida and are not citizens of the State of New York. Accordingly, there is complete diversity among the parties.

3. The amount in controversy exceeds $75,000.00, exclusive of interest, costs, and attorneys' fees.

4. Venue is proper in this Court pursuant to 28 USC § 1391(a).

5. On October 27, 2004, Trump and Simdag entered into a License Agreement ("the Original Agreement"). A copy of the Original Agreement is attached hereto as **Exhibit A**.

6. On March 31, 2006, Trump and Simdag entered into an amendment to the Agreement ("the Amendment"). A copy of the Amendment is attached hereto as **Exhibit B**.[1]

7. Pursuant to the Agreement, Trump agreed to grant to Simdag an exclusive license in, and right to use, Trump's registered trademark "Trump Tower Tampa" in accordance with, and subject to, the terms of the Agreement.

8. Simdag intended to use the "Trump Tower Tampa" trademark to promote (a) its development of a first class, luxury residential condominium building in Hillsborough County, Florida ("the Building"), and (b) its sale of residential and retail and/or commercial condominium units located within the Building. Accordingly, at all times material to this action, Trump relied on Simdag to undertake and maintain sole and exclusive responsibility for all actions appropriate and necessary to comply with Simdag's obligations under the Agreement and for the construction of the Building, including, but not limited to:

    a. design, construction, and equipment of the Building;

    b. obtaining all necessary licenses and permits for construction and occupancy;

    c. preparing and obtaining approval of the Offering Circular and HUD filings;

    d. advertising and promotion;

---

[1] The Original Agreement as amended by the Amendment will be referred to hereinafter as "the Agreement."

e. marketing and sales;

f. solicitation of purchase contracts;

g. accepting prospective purchasers' deposits and placing those deposits in escrow;

h. obtaining necessary financing; and

i. identifying and entering into appropriate contracts with suppliers, vendors, contractors, and other parties to provide necessary materials and services.

9. In exchange for receiving an exclusive license in, and right to use, the "Trump Tower Tampa" trademark, and consistent with the matters described above for which Simdag was responsible, Simdag obligated itself within the Agreement, among other things:

a. to begin construction of the Building within eighteen (18) months from the date of the Agreement (or, that is, by April 27, 2006);

b. to close title to, or otherwise obtain bona fide purchase contracts for, seventy percent (70%) of the residential condominium units of the Building within thirty (30) months from the date of the Agreement (or, that is, by April 27, 2007);

c. to pay to Trump a License Fee of $2,840,000.00 in twenty-two (22) consecutive monthly installments of $129,091.00, in each case to be paid on the first day of each month, commencing on April 1, 2006; and

d. to pay to Trump an additional license fee equal to fifty percent (50%) of the "Net Sales Profit" as defined under paragraph 2 of the Amendment.

10. Trump fully performed his obligations under the Agreement. However, despite Simdag's several responsibilities as described above, and despite Simdag's repeated assurances to Trump, and to Trump's representatives, that Simdag was fully able to comply with all of its

TAMP_538232.6

obligations and responsibilities, both under the Agreement and otherwise with respect to the construction of the Building, Simdag failed and refused to comply with those obligations and responsibilities, and thereby breached the Agreement.

11. All conditions precedent to the filing of this action have been performed, waived, or excused.

## Count I
## Breach Of Contract

12. Trump realleges and incorporates by reference the allegations set forth in paragraphs 1 through 11 as if fully set forth herein.

13. This is an action for breach of contract against Simdag.

14. Simdag failed to commence construction of the Building by April 27, 2006, as required by paragraph 6(g) of the Agreement.

15. Simdag failed to close title to, or otherwise obtain bona fide purchase contracts for, seventy percent (70%) of the residential condominium units of the Building by April 27, 2007, as required by paragraph 6(i) of the Agreement.

16. Simdag failed to pay to Trump the monthly installments of the License Fee for the months of October 2006 to and including May 2007, as required by paragraph 1(b) of the Amendment. Accordingly, Simdag presently owes Trump a minimum of $1,032,776.00 under the Agreement.

17. In addition, Simdag's failure to comply with its obligations under the Agreement has breached Simdag's obligation to pay to Trump the Additional License Fees called for by the Agreement.

18. Simdag's failure to fulfill the foregoing obligations under the Agreement constitutes a material breach of the Agreement.

19. Accordingly, on April 16, 2007 Trump sent a letter to Simdag, advising Simdag that it was in breach of the Agreement and demanding that Simdag cure its breach within 30 days from the date of the letter ("the Default Notice Letter"). A copy of the Default Notice Letter is attached hereto as **Exhibit C**.

20. To date, Simdag has failed to take any action to cure the defaults described in the Default Notice Letter, and in fact failed to respond in any manner to the Default Notice Letter.

21. Accordingly, on May 17, 2007, Trump sent a second letter to Simdag, terminating the Agreement ("the Termination Letter") pursuant to paragraph 6 of the Agreement. A copy of the Termination Letter is attached hereto as **Exhibit D**.

22. As a direct and proximate result of Simdag's breach of the Agreement, Trump has suffered damages.

23. Trump has retained the services of the undersigned attorneys to prosecute the claims asserted in this Complaint, and is therefore obligated to pay the undersigned a reasonable fee for their services. Pursuant to paragraph 9(a) of the Agreement, Simdag is responsible for all attorneys' fees incurred by Trump in the prosecution of this action.

WHEREFORE, Trump respectfully requests that this Court enter Judgment against Simdag for the following:

    a. damages caused to Trump by Simdag's breach;

    b. pre-judgment and post-judgment interest on the claim as allowed by law;

    c. attorneys' fees;

    d. the costs of this action; and

    e. such other and further relief as the Court deems proper.

## Count II
## Action On Guaranty

24. Trump realleges and incorporates by reference the allegations set forth in paragraphs 1 through 11, and 14 through 22 as if fully set forth herein.

25. On October 27, 2004, Dagostino, Howell, Lyons, Sheppard, and Simon (collectively, "the Guarantors") executed a Guaranty, in which the Guarantors agreed unconditionally and irrevocably to guarantee to Trump the full and prompt performance, observance, and payment of all of Simdag's obligations under the Agreement, monetary and nonmonetary, including, without limitation, the full and prompt payment of the License Fee payable by Simdag under the Agreement. A copy of the Guaranty is attached hereto as **Exhibit E**.

26. As more particularly set forth hereinabove, Simdag has failed to perform its obligations under the Agreement.

27. Thus, as a result of Simdag's default, and pursuant to the terms of the Guaranty, the Guarantors are liable to Trump for payment of all amounts due to Trump by Simdag under the Agreement, together with interest, attorneys' fees, and all additional damages allowed by same.

28. Trump has retained the services of the undersigned attorneys to prosecute the claims asserted in this Complaint, and is therefore obligated to pay the undersigned a reasonable fee for their services. Pursuant to paragraph 14 of the Guaranty, the Guarantors are responsible to pay attorneys' fees incurred by Trump in this action upon the Guaranty.

WHEREFORE, Trump respectfully requests that this Court enter Judgment against Frank Dagostino, Howard Howell, Robert Lyons, Patrick Sheppard, and Jody Simon for the following:

    a.    compensatory damages;

  b.  pre-judgment and post-judgment interest on the claim as allowed by law;

  c.  attorneys' fees;

  d.  the costs of this action; and

  e.  such other and further relief as the Court deems proper.

_____
Christopher L. Griffin (FBN 273147)
(cgriffin@foley.com)
Lauren L. Valiente (FBN 034775)
(lvaliente@foley.com)
Foley & Lardner LLP
100 North Tampa Street, Suite 2700
Tampa, FL 33602-5810
P.O. Box 3391
Tampa, FL 33601-3391
Telephone: 813.229.2300
Facsimile: 813.221.4210
Attorneys for Trump

TAMP_538232.6